# THE DELAWARE AND HUDSON COMPANY ET AL. *v.* UNITED STATES AND INTERSTATE COMMERCE COMMISSION.

## APPEAL FROM THE DISTRICT COURT OF THE UNITED STATES FOR THE SOUTHERN DISTRICT OF NEW YORK.

No. 212. Argued November 19, 1924.—Decided January 5, 1925.

1. A "tentative valuation" of a carrier's property made by the Interstate Commerce Commission under § 19a of the Interstate Commerce Act, as amended, is no more than an *ex parte* appraisement without probative effect. P. 448.
2. By the authorized "protest," a carrier may offer objections to anything done or omitted in respect of such tentative valuation and secure the Commission's rulings before the valuation becomes final. *Id.*
3. Where there is nothing to indicate that, in making such tentative valuation, the Commission has wilfully disregarded the law, as honestly interpreted, or failed to proceed in an orderly manner, or that it will not consider and pass upon all matters set up in a protest filed by the carrier before arriving at its final valuation, a suit to annul the tentative valuation will not lie. *Id.*

295 Fed. 558, affirmed.

APPEAL from a decree of the District Court dismissing on motion, for want of equity, a suit to set aside a tentative valuation of the plaintiffs' railroad properties.

*Mr. H. T. Newcomb,* with whom *Mr. Walter C. Noyes* was on the briefs, for appellants.

The order of March 28, 1923, does not comply with the valuation Act.

Appellants' petition alleges, not merely omissions and neglect to comply with the law, but numerous specific refusals to do and to report the things which the law specifies. These well-pleaded facts are admitted by the motions to dismiss, filed by the United States and the Commission. *Chicago Junction Case,* 264 U. S. 258, 262,

263; *Detroit United Ry.* v. *Detroit,* 248 U. S. 429; *Oklahoma Gas Co.* v. *Russell,* 261 U. S. 290.

The Commission has, by its own admission, attempted to exercise the "general power which the Act of Congress gave," *i. e.,* the power to make a "tentative valuation," but, in the very act of doing so, has again committed the error of "disregarding the essential conditions imposed by Congress upon its exercise." *Kansas City So. Ry. Co.* v. *Interstate Commerce Comm.,* 252 U. S. 178.

Appellants are entitled to a lawful "tentative valuation" as the statutory foundation for further proceedings. in the statutory process.

More fully stated, the foregoing proposition amounts to this: That (a) the term "tentative valuation" is defined by § 19a; (b) the Commission cannot make anything a "tentative valuation" that departs substantially from the statutory definition; (c) if the law is obeyed in matters of form and substance, the preparation of the "tentative valuation" is otherwise entirely controlled by the Commission; (d) a lawful "tentative valuation" marks the completion of an *ex parte* proceeding and opens the door for an inter-party proceeding; (e) this inter-party proceeding is, or may be, begun by a protest and in it the "tentative valuation" imposes upon the protestant the burden of proof to show that it ought to be altered; (f) Congress intended that all protestants (the public as well as the carrier may protest), should have all the matters set forth in the statutory definition of a "tentative valuation" for their protection in this inter-party proceeding; and (g) appellants, having been denied a lawful "tentative valuation," will be greatly at disadvantage if the inter-party proceeding is allowed to go forward before a lawful "tentative valuation" has been made, and they have had the full statutory opportunity to base a protest thereon. They have no means

of enforcing their right to a lawful " tentative valuation " save this proceeding.

Appellants consider that Congress intended to make the " tentative valuation " *prima facie* evidence in the subsequent proceedings leading to a " final valuation." It is recognized that the term is not so applied in the statute and the District Court concluded otherwise, holding that it is " without any probative effect *per se.*"

Such, however, is clearly not the view of the Commission. *Durham & South Carolina R. R.,* 84 I. C. C. 313.

By the Valuation Act, the initiative in valuation was placed·with the Commission, an initiative that ordinarily carries with it the burden of affirmative proof. The right to require this proof according to the ordinary forms and rules of evidence was taken from the carriers, and Congress sought to set up an equivalent in a meticulously defined " tentative valuation." The right to have the other side prove its case is always a substantial right, although the legislature may, when it does not act unreasonably or arbitrarily, modify the rules of evidence, shift the burden of proof, make one fact *prima facie* evidence of another and establish presumptions.

In the determination of " final valuations," in proceedings upon protests to " tentative valuations," the Commission consistently treats the latter as having evidentiary force beyond that ordinarily attributed to mere *prima facie* evidence. [Numerous citations to reports of the Commission.]

In fixing railway rates and other matters within its authority, the Commission consistently treats its " tentative valuations," and even the inquiries of its Bureau of Valuation that are preliminary to " tentative valuations," as having evidentiary weight. [Numerous citations to reports of the Commission.]

This is a suitable proceeding in which appellants are entitled to relief against the order. 36 Stat. 539; 38 Stat.

219; *Seaboard Air Line Ry. Co.* v. *United States,* 254 U. S. 57; *Interstate Commerce Comm.* v. *Union Pac. R. R. Co.,* 222 U. S. 541.

Power to make the order, power which must be found within a statutory grant, is the question the courts must determine. *Interstate Commerce Comm.* v. *Illinois Cent. R. R. Co.,* 215 U. S. 452.

The statute will be searched in vain in the effort to find a grant of power to make a " tentative valuation " departing so widely and in such fundamentally important particulars from the statutory definition. The authority granted is to comply with the statute, not to deny and evade its basic principle, namely, that the " tentative valuation " must comprehensively, and in the lawful detail, inform all parties in interest, public and corporate, of what they have to meet and overcome if they are dissatisfied with its conclusions. *Interstate Commerce Comm.* v. *Union Pac. R. R. Co.;* 222 U. S. 541; *Southern Pac. Co.* v. *Interstate Commerce Comm.,* 219 U. S. 433; *Interstate Commerce Comm.* v. *Chicago, etc. Ry. Co.,* 218 U. S. 88; *United States* v. *New River Co.,* 265 U. S. 533.

In several cases orders of the Commission have been set aside because it has misconstrued the meaning of such terms as " lateral branch line " and " reasonable and satisfactory through route." *Interstate Commerce Comm.* v. *Delaware, etc. R. R. Co.,* 216 U. S. 531; *United States* v. *Baltimore, etc. R. R. Co.,* 226 U. S. 14; *Interstate Commerce Comm.* v. *Northern Pac. Ry. Co.,* 216 U. S. 538; *Harriman* v. *Interstate Commerce Comm.,* 211 U. S. 407.

Orders of the Commission may be set aside, when not in accordance with the statutory grant of power, even though those seeking relief were not parties to the proceedings before the Commission. *Interstate Commerce Comm.* v. *Diffenbaugh,* 222 U. S. 42; *Skinner & Eddy*

*Co.* v. *United States,* 249 U. S. 557; *Hines Trustees* v. *United States,* 263 U. S. 143; *Atlantic Coast Line R. R. Co.* v. *Interstate Commerce Comm.,* 194 Fed. 449; *Louisiana & Pac. Ry. Co.* v. *United States,* 209 Fed. 244.

Appellants recognize that there are some orders of the Commission which are exempt from judicial review. *United States* v. *Illinois Cent. R. R. Co.,* 244 U. S. 82; *Procter & Gamble Co.* v. *United States,* 225 U. S. 282; *Manufacturers Ry. Co.* v. *United States,* 246 U. S. 457.

Determination of value, under statutes of this character, is a function legislative in character. *Keller* v. *Potomac Electric Co.,* 261 U. S. 428; *Chicago Junction Case,* 264 U. S. 258.

The real test, upon an application to enjoin or set aside an order of the Commission, is whether granting the relief sought would constitute an exercise by the court of any administrative function that has been properly delegated to the Commission.

The order now before this Court is a final order in the sense that it establishes the only " tentative valuation " which the appellants can obtain from the Commission if it is treated as a " tentative valuation " and is not set aside in this proceeding. And a " tentative valuation " is as final, as a " tentative valuation," and for the purposes for which it is made, as any order of the Commission can be. *Prendergast* v. *New York Tel. Co.,* 262 U. S. 43.

The order is affirmative. *Intermountain Rate Cases,* 234 U. S. 476. It constrains appellants either to let a " tentative valuation," which in scarcely any particular complies with the law, ripen into a final valuation, or to proceed, in difficulty and darkness, to attack, a " valuation " as to essential elements of which they are not advised.

It may be argued that appellants began this proceeding prematurely and that it was their duty to proceed

upon the order, as though it were a lawful "tentative valuation," thereby somewhat indefinitely postponing their need of relief. The delay might be long and it would certainly be injurious. Moreover, the opportunity for a lawful "tentative valuation" would have been allowed to pass and the proceedings subsequent to the "tentative valuation," which the law prescribes, would have gone forward upon an injurious, irregular, and unlawful foundation. Parties are not required to submit to such damage or to such delays. *Oklahoma Gas Co.* v. *Russell,* 261 U. S. 290; *Pennsylvania* v. *West Virginia,* 262 U. S. 553.

Such a postponement might have forced appellants into many successive situations in which they would have been obliged repeatedly to seek relief in the courts. *Kansas City So. Ry. Co.* v. *Interstate Commerce Comm.,* 252 U. S. 178.

The extraordinary provisions of par. j of § 19a, limiting the method and scope of judicial review of any determination of "final value" under that section, suggest, at least, that unless the "tentative valuation" can afford the requisite opportunity for correcting errors of law and abuses of discretion or power on the part of the Commission, the whole of § 19a may be unconstitutional and void. Courts will construe acts of legislation in such a way as to avoid constitutional defects and grave doubts as to constitutionality. *Keller* v. *Potomac Electric Co.,* 261 U. S. 428; *Bluefield Co.* v. *Public Service Comm.,* 262 U. S. 679.

*Mr. Blackburn Esterline,* Assistant to the Solicitor General, with whom *Mr. Solicitor General Beck* was on the brief, for the United States.

The tentative valuation is not justiciable.

If the petitioners may maintain the petition to strike down the tentative valuation, other carriers may do likewise, *ad infinitum,* until all of the tentative valuations

have become the subject of equity proceedings in the District Courts.

Also, if the equity proceedings are allowed as against the tentative valuation, they would, if unsuccessful, undoubtedly be recommenced after the final valuation.

If the petition of appellants may be maintained, there are (a) the hearing on the petition in the court to enjoin the tentative valuation; (b) the hearing on the protest before the Commission; (c) the hearing on the second petition in the court to enjoin the final valuation; (d) the hearing on the evidence offered before the court in judicial proceedings in which the final valuation shall be *prima facie* evidence of value. Add to all of these the right to file the petition for writ of mandamus, *Kansas City So. Ry. Co.* v. *Interstate Commerce Comm.*, 252 U. S. 178, and we shall have at least five separate proceedings, through which the carriers may contest the work of the Commission under the Valuation Act which does not meet with their approval. Obviously with such unlimited judicial review the attempt at physical valuation by the Congress and the Commission will result in utter failure.

The *prima facie* effect of the tentative and final valuations was deliberately adopted by the Congress after full debate.

The tentative valuation deprives no carrier of a constitutional right.

It is enough that the carrier shall have the right to protest the tentative valuation and to introduce new evidence as against a final valuation when the latter becomes relevant in court proceedings. If limited to that right the carrier is not without due process of law. *Meeker* v. *Lehigh Valley R. R. Co.*, 236 U. S. 412; *Mills* v. *Lehigh Valley R. R. Co.*, 238 U. S. 473.

If the " tentative valuation " declared by the Commission is justiciable within the meaning of the Commerce

Court 'Act, then the jurisdiction of the District Court is exclusive. The provisions of the Commerce Court Act and those of the Valuation Act for judicial review may not stand together; one or the other must fall. Congress did not intend any such conflict.

*Mr. P. J. Farrell* for the Interstate Commerce Commission.

The facts pleaded are not sufficient to entitle petitioners to relief in equity.

The order of March 28, 1923, is simply an interlocutory order of the Commission, with which the Court will not interfere under the circumstances disclosed by the record in this case. *Lane* v. *Mickadiet,* 241 U. S. 201; *Interstate Commerce Comm.* v. *Humboldt S. S. Co.,* 224 U. S. 474.

The questions presented for determination by the petition are not covered by the general equity jurisdiction of the court, because they are involved in and depend upon the provisions of the Interstate Commerce Act. *Procter & Gamble Co.* v. *United States,* 225 U. S. 282.

The petition does not show that appellants will suffer legal injury or be harmed in any way if the relief asked for by the petition is not granted.

MR. JUSTICE McREYNOLDS delivered the opinion of the Court.

Appellants are proprietors of the railroads which make up the system now operated by The Delaware and Hudson Company. Purporting to proceed as required by § 19a, Interstate Commerce Act, as amended, (Acts of March 1, 1913, c. 92, 37 Stat. 701; February 28, 1920, c. 91, 41 Stat. 456, 493; June 7, 1922, c. 210, 42 Stat. 624) the Interstate Commerce Commission, on March 28, 1923, declared tentative valuations of the properties which the several companies owned June 30, 1916, and allowed thirty days from April twelfth for protests.

Elaborate protests were duly presented. Before they were acted upon appellants began this proceeding—June 13, 1923—wherein they claim that defects in the valuation order prevented them from adequately protecting their rights by protests, and pray that it be annulled. The petition states that the commission refused to investigate, ascertain and report many facts relative to values as required by the statute; refused to investigate, ascertain and report concerning properties used by The Delaware and Hudson Company for purposes of a common carrier; refused to apply to inventories prices existing and current on June 30, 1916; omitted to report analyses of the methods employed for ascertaining values, costs, etc.; also omitted to investigate and report the amount of working capital actually used for purposes of common carriers.

Upon motion the petition was dismissed for want of equity, and the matter is here by direct appeal.

Section 19a of the Interstate Commerce Act, as amended, provides—

"(a) That the commission shall, as hereinafter provided, investigate, ascertain, and report the value of all the property owned or used by every common carrier subject to the provisions of this Act. . . .

"(b) First. In such investigation said commission shall ascertain and report in detail as to each piece of property, other than land, owned or used by said common carrier for its purposes as a common carrier, the original cost to date, the cost of reproduction new, the cost of reproduction less depreciation, and an analysis of the methods by which these several costs are obtained, and the reason for their differences, if any. The commission shall in like manner ascertain and report separately other values, and elements of value, if any, of the property of such common carrier, and an analysis of the methods of valuation employed, and of the reasons for any differences

between any such value and each of the foregoing cost values.

" Second. Such investigation and report shall state in detail and separately from improvements the original cost of all lands, rights of way, and terminals owned or used for the purposes of a common carrier, and ascertained as of the time of dedication to public use, and the present value of the same.

" Third. Such investigation and report shall show separately the property held for purposes other than those of a common carrier, and the original cost and present value of the same, together with an analysis of the methods of valuation employed. . . .

"(f) Upon the completion of the valuation herein provided for the commission shall thereafter in like manner keep itself informed of all extensions and improvements or other changes in the condition and value of the property of all common carriers, and shall ascertain the value thereof, and shall from time to time revise and correct its valuations, showing such revision and correction classified and as a whole and separately in each of the several States and Territories and the District of Columbia, which valuations, both original and corrected, shall be tentative valuations and shall be reported to Congress at the beginning of each regular session. . . .

"(h) Whenever the commission shall have completed the tentative valuation of the property of any common carrier, as herein directed, and before such valuation shall become final, the commission shall give notice by registered letter to the said carrier, the Attorney General of the United States, the governor of any State in which the property so valued is located, and to such additional parties as the commission may prescribe, stating the valuation placed upon the several classes of property of said carrier, and shall allow thirty days in which to file

a protest of the same with the commission.   If no protest is filed within thirty days, said valuation shall become final as of the date thereof.

"(i) If notice of protest is filed the commission shall fix a time for hearing the same, and shall proceed as promptly as may be to hear and consider any matter relative and material thereto which may be presented in support of any such protest so filed as aforesaid.   If after hearing any protest of such tentative valuation under the provisions of this Act the commission shall be of the opinion that its valuation should not become final, it shall make such changes as may be necessary, and shall issue an order making such corrected tentative valuation final as of the date thereof.   All final valuations by the commission and the classification thereof shall be published and shall be prima facie evidence of the value of the property in all proceedings under the Act to regulate commerce as of the date of the fixing thereof, and in all judicial proceedings for the enforcement of the Act approved February fourth, eighteen hundred and eighty-seven, commonly known as ' the Act to regulate commerce,' and the various Acts amendatory thereof, and in all judicial proceedings brought to enjoin, set aside, annul, or suspend, in whole or in part, any order of the Interstate Commerce Commission."

The " tentative valuation " of the statute is no more than an *ex pàrte* appraisement without probative effect. By the authorized " protest " the carrier may offer objections to anything done or omitted in respect thereof and secure the commission's rulings before the valuation becomes final.   Prior to the present proceeding protests, raising the very issues now tendered, had been made and were awaiting action.   There is nothing to indicate that the commission wilfully disregarded the law as honestly interpreted or failed to proceed in an orderly manner, or that it will not consider and pass upon all the

matters set up in the protest and repeated here. Pending further action by it the tentative valuation will not become final and no proceedings thereon can be taken. Under the circumstances disclosed appellants must pursue the remedy provided by the statute and give the Commission opportunity to take final action before they can properly ask interposition by the courts.

The decree below is

*Affirmed.*

Mr. Justice Butler took no part in the consideration or decision of this cause.