# UNITED STATES ET AL. *v.* ILLINOIS CENTRAL RAILROAD COMPANY.

APPEAL FROM THE DISTRICT COURT OF THE UNITED STATES FOR THE EASTERN DISTRICT OF ILLINOIS.

No. 310.   Argued April 13, 16, 1917.—Decided May 21, 1917.

· An order of the Interstate Commerce Commission assigning a cause for hearing upon an issue of reparation is not an order in the sense of § 1 of the Commerce Court Act, 36 Stat. 539; Judicial Code, § 207; and the District Court has no jurisdiction to enjoin the Commission from proceeding with such hearing. *Procter & Gamble Co.* v. *United States*, 225 U. S. 282.

Reversed.

THE case is stated in the opinion.

*Mr. Assistant Attorney General Underwood,* with whom *Mr. Blackburn Esterline,* Special Assistant to the Attorney General, was on the brief, for the United States.

*Mr. Joseph W. Folk* for the Interstate Commerce Commission.

*Mr. Robert V. Fletcher,* with whom *Mr. Blewett Lee* was on the brief, for appellee.

MR. JUSTICE McKENNA delivered the opinion of the court.

Appeal from a decree cancelling an order of the Interstate Commerce Commission fixing a hearing of certain complaints made to it by certain coal companies for damages for alleged failure to furnish cars upon demand, and enjoining proceedings upon the complaints.

The decree was granted, three judges sitting, upon the petition of appellee, herein referred to as the railroad company.

The railroad company is an intrastate and interstate carrier of freight and passengers and among other commodities transports coal on its line, which, during the years 1911, 1912 and 1913, was shipped in interstate commerce by producers thereof on through rates established by the railroad company.

Certain coal companies, shippers over the lines of the railroad company, filed petitions before the Interstate Commerce Commission asking that damages be assessed against the railroad company for an alleged failure to supply a sufficient number of coal cars for their respective shipping needs.

The petitions were received by the Commission and

were by it treated as substantially presenting but a single complaint, were so numbered as to indicate the fact, and were thereafter in all proceedings treated and disposed of together by one report and order.

The railroad company filed an answer to each complaint in which it denied the jurisdiction of the Commission to award damages for failure to furnish coal cars and averred that in actions of such character exclusive jurisdiction is in the courts. In due course a hearing was had by the Commission and the railroad company objected to any further proceeding before it on the ground of want of jurisdiction, at least as to so much of the complaints of the coal companies as dealt only with damages, and moved that so much of the complaints as dealt with the demand for damages be dismissed.

At the argument of the motion counsel for the coal companies expressly declared that so much of the complaints as charged any undue and unlawful discrimination by the railroad company in the distribution of its cars was dismissed and it was stipulated that the complaints should be considered as so amended as to omit such charges. Thereafter the matter proceeded upon the sole issue of damages for alleged failure to furnish cars upon demand.

On January 30, 1915, four members of the Commission filed a report holding that the Commission had jurisdiction to consider the complaints and award whatever damages might be proved. Three members dissented. The reports are attached to the petition.

A petition for rehearing was made and denied and on August 18, 1915, the Commission entered its order assigning the cause for further hearing upon the issue of reparation. The following is the order entered:

"No. 6128—Vulcan Coal and Mining Company *vs.* Illinois Central Railroad Company. No. 6128 Sub-No. 1—St. Louis-Coulterville Coal Company *vs.* Illinois Cen-

tral Railroad Company.   No. 6128 Sub-No. 2—Groom Coal Company *vs.* Illinois Central Railroad Company.

"The above-entitled cases are assigned for hearing October 1, 1915, ten o'clock a. m., at Hotel Jefferson, St. Louis, Mo., before Examiner Wilson.

"By the Commission."

In the appellee's petition in the District Court it alleged that the hearing would be proceeded with unless restrained, that the railroad company would be compelled to attend such hearing, would be put to great expense and that in all probability an order of reparation would be made; that the railroad company would be forced to defend at great trouble and expense three separate and several suits at law based on such awards, all of which would depend upon the same facts and principles of law, thereby subjecting the railroad company to a multiplicity of suits; and that if reparation should be awarded it would be placed at great disadvantage in defending suits based on the awards, since the Commission's finding of the ultimate facts is by statute made *prima facie* correct and no opportunity is given for a judicial review of the strength and competency of the evidence upon which such a finding rests.

A subpœna against the United States was prayed and an order annulling the order of the Commission and, pending the hearing, restraint of the Commission and its members from action.

The United States, appearing by its counsel, moved to dismiss the petition on the grounds that—(1) The action of the Commission did not constitute an order within the meaning of § 1 of the act entitled "An Act to Create a Commerce Court" and that the court, therefore, was without jurisdiction to enjoin or annul or suspend the same in whole or in part.   (2) The petition is an attempt in advance of any action or order of the Commission to enjoin it from acting and proceeding on a complaint

brought and pending before it.   (3) The Act to Regulate
Commerce makes an order for the payment of money
only *prima facie* evidence, cuts off no other defense, takes
no question from court or jury nor in any wise denies due
process of law; that "such an order is merely a rule of
evidence, and notice of a hearing at which such an order
may be entered is not an order within the meaning of
section 1 of the act entitled 'An act to create a Commerce
Court,' etc., approved June 18, 1910, and the court has
no jurisdiction to enjoin, set aside, annul, or suspend the
same in whole or in part."

The motion to dismiss was denied and the United States,
without waiving it, moved to dismiss the petition on the
ground that it was without equity and did not state a
cause of action.

. It was decreed that the Commission had no jurisdiction
to hear and determine the complaints of the coal com-
panies, that its order be cancelled, and it be permanently
enjoined from further proceeding with the hearing of the
complaints.

The Interstate Commerce Commission appeared in the
suit and also moved to dismiss the petition on the grounds
—(1) That the order of the Commission was merely a
notice of a hearing and not a reviewable order.   (2) That
the principal office of the Commission is in Washington
and suit to enjoin any of its proceedings must be brought
in the District of Columbia, and not in the Eastern Dis-
trict of Illinois.   (4) That irreparable injury was not
shown.

After certain admissions and denials of the petition the
Commission asserted its jurisdiction.

In support of the decree the contention of the railroad
company is that the Interstate Commerce Commission
has no jurisdiction to award damages for failure to furnish
cars and that this was the only issue submitted to the
Commission and the only issue decided by it.   The Com-

mission having no jurisdiction, the further contention is that the railroad company can restrain its order because it will subject the company to the trouble and expense of the hearing, the probability of an order of reparation against it, and a multiplicity of suits, in which suits it will be confronted by the order of reparation as evidence without opportunity for judicial review of the strength and competency of the evidence.

The contentions and the recited consequences of the order of the Commission are met by opposing ones. The United States asserts that the action of the Commission fixing a day for the hearing of the complaints of the coal companies is not an order within the meaning of § 1 of the Act of June 18, 1910, creating the Commerce Court (36 Stat. 539), and the subsequent Act of October 22, 1913, abolishing that court and transferring the jurisdiction conferred upon it to the several district courts of the United States. (38 Stat. 208, 219.) It is only by virtue of those acts, it is said, that the United States can be sued and it is provided by them that the United States can only be sued in "cases brought to enjoin, set aside, annul, or suspend in whole or in part any order of the Interstate Commerce Commission." The Commission makes the same contention and some others and both it and the United States insist that the action of the Commission was not an order within the meaning of the cited provision. *Procter & Gamble Co.* v. *United States,* 225 U. S. 282, 293, is adduced as authority for the insistence.

The Procter & Gamble Company was the owner of 500 railroad tank cars used for the transportation of its products over the lines of certain railroads, and the company filed a complaint before the Interstate Commerce Commission complaining of demurrage rules of the railroad companies, which had been approved by the Commission, as unjust and oppressive and alleging that to enforce them would create preferences and discrimina-

tions forbidden by the Interstate Commerce Act. The complaint was not sustained and an award of relief was denied.

Thereupon the Procter & Gamble Company filed a petition in the Commerce Court in which the company repeated its accusations against the demurrage rules and charged also that the order of the Commission dismissing its complaint was null and void and beyond the power of the Commission in that it sustained the validity of the rules.

The Commerce Court held that it had jurisdiction of the cause and that, for the purpose of jurisdiction, the refusal of the Commission to afford the relief prayed for was the exact equivalent of an order granting affirmative relief, and, as a corollary of this power, it was further decided that there was jurisdiction to award pecuniary relief for demurrage if any was illegally exacted. On the merits the court decided against the Procter & Gamble Company.

This court reversed the ruling and held that the Commerce Court had no jurisdiction as the order of the Commission neither compelled "the doing or abstaining from doing of acts embraced by a previous affirmative command of the Commission." The reasoning of the court explored the whole act and omitted no circumstance which could bear on its construction and its efficacy for the purpose for which it was enacted. Considering the first and second subdivisions of § 1, (§ 207 of the Judicial Code,) which deals with the jurisdiction of the Commerce Court, it was said that the first "provides for the enforcement of orders, that is, the compelling of the doing or abstaining from doing of acts embraced by a previous affirmative command of the Commission;" and that the second, "dealing with the same subject from a reverse point of view, provides for the contingency of a complaint made to the court by one seeking to prevent the enforcement of orders of the Commission such as are contemplated by the first

paragraph. In other words, by the coöperation of the two paragraphs, authority is given on the one hand, to enforce compliance with the orders of the Commission if lawful, and, on the other hand, power is conferred to stay the enforcement of an illegal order." Other provisions of the act were said to be as convincing.

It will thus be observed, as said by counsel for the Commission, "the power of a court 'to stay the enforcement of an illegal order' is, in a sense, reciprocal to its power to enforce compliance with an order of the Commission, 'if lawful.' . . . And just as the district court would have been powerless, in the instant case, to compel the appellee to attend the hearing with respect to which the notice had been given, so also was it without lawful authority to annul that notice or to enjoin the Commission from proceeding in the premises." And again, as other counsel say, the alleged order was nothing more than notice of a hearing which the railroad company might attend or not, as it saw fit.

The notice, therefore, had no characteristic of an order, affirmative or negative. It was a mere incident in the proceeding, the accident of the occasion—in effect, and, it may be contended, in form, but a continuance of the hearing. The fact that the continuance was to another day and place did not change its substance or give it the character described in *Procter & Gamble Co.* v. *United States,* one which constrained the railroad company to obedience unless it was annulled or suspended by judicial decree.

It is not necessary to pass upon the other contentions of appellants.

*Decree reversed and cause remanded with directions to grant the motions to dismiss the petition.*